IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

| | |
|---|---|
| In the Matter of: | Case No.: |
| ZEPHYR LAND HOLDINGS, LLC | 10-00437-8-SWH |
| Debtor | Chapter 11 |

**PLAN OF REORGANIZATION**

Pursuant to the provisions of Section 1123 of the Bankruptcy Code (11 U.S.C. § 1123), the Debtor hereby submits the following Plan of Reorganization ("Plan"):

**I.  SUMMARY OF PLAN**

The Plan contemplates a reorganization and continuation of the Debtor's business.  In accordance with the Plan, the Debtor intends to satisfy all allowed creditor claims in full from the sale of a portion of the Debtor's real property.

The Debtor's Plan is based on the Debtor's belief that the interests of its creditors will be best served if it is allowed to reorganize its debts.

**II.  DEFINITIONS**

1.  "ADMINISTRATIVE CLAIM" shall mean any Claim entitled to priority under Section 507(a)(1) of the Bankruptcy Code.

2.  "ALLOWED" shall mean (a) any Claim against the Debtor, proof of which was timely filed or by order of the Bankruptcy Court was not required to be filed; or (b) any Claim that has been listed in the Schedules as liquidated in amount and not disputed or contingent; and in each such case in (a) or (b) above, as to which either (1) no objection to the allowance thereof or other similar pleading has been filed within the applicable period set forth in Section IV, or (2) an objection or other similar pleading has been filed and the Claim has been allowed by a Final Order of the Bankruptcy Court, but only to the extent so allowed.

3.  "AVAILABLE CASH" shall mean the total cash available for distribution on the Effective Date.

4.  "BANKRUPTCY CODE" shall mean the United States Bankruptcy Code, Title ll of the United States Code, as enacted in 1978 and thereafter amended.  References to "§___" herein shall refer to a section of the Bankruptcy Code, 11 U.S.C. §101, et seq.

5.  "BANKRUPTCY RULES" shall mean the Federal Rules of Bankruptcy

1

Procedure, as amended from time to time, as applicable to Chapter 11 cases.

6. "CLAIM" shall mean a duly listed or a timely filed claim which is allowed in order to be paid by the Court.

7. "CLASS" shall mean any one of the Classes of Claims or Interests designated in Article III of the Plan.

8. "CONFIRMATION DATE" shall mean the date of entry by the Court of an order confirming the Plan at or after a hearing pursuant to 11 U.S.C. §1129.

9. "CONFIRMATION HEARING" shall mean the hearing conducted by the Court regarding confirmation of the Plan pursuant to 11 U.S.C. §1129.

10. "CONFIRMATION ORDER" shall mean the order of the Court confirming the Plan.

11. "COURT" shall mean the United States Bankruptcy Court for the Eastern District of North Carolina, including the United States Bankruptcy Judge presiding in the Chapter 11 case of the Debtor.

12. "CREDITORS" shall mean all creditors of the Debtors holding claims for unsecured debts, liabilities, demand or claims of any character whatsoever.

13. "DEBTOR" shall mean the Debtor identified on the first page of this Plan.

14. "DISBURSING AGENT" shall mean George Mason Oliver, attorney, or that person selected by the Court who shall perform the duties and have the rights and obligations described herein.

15. "DISCLOSURE STATEMENT" shall mean the Disclosure Statement describing this Plan prepared in accordance with §1125 and approved by order of the Bankruptcy Court, to be distributed to the holders of claims whose votes with respect to this Plan are to be solicited.

16. "DISPUTED CLAIM" shall mean any claim (a) that is scheduled by the Debtor as disputed, contingent or unliquidated, or (b) that is scheduled by the Debtor, or proof of which has been filed with the Bankruptcy Court and with respect to which a timely objection to allowance, in whole or in part, has been filed and which objections have not been (i) withdrawn or settled, or (ii) determined by a Final Order.

17. "DISTRIBUTION DATE" shall mean the date on which distributions are to be made under the Debtor's Plan.

18. "EFFECTIVE DATE" shall be that date on which the Order Confirming Plan becomes final and non-appealable.

19. "FINAL DECREE" shall mean the order of this Court pursuant to Bankruptcy Rule 3022 closing this case.

20. "FINAL ORDER" shall mean an order of the Court that has been entered and either (a) the time for appeal from such entered order has expires; or (b) any appeal that has been timely filed has been dismissed or otherwise finally determined.

21. "GENERAL UNSECURED CLAIM" shall mean any claim, whether or not liquidated or contingent, other than a priority claim, administrative claim, or secured claim.

22. "IMPAIRED" classes of creditors are those whose claims or interests are altered by the Plan, or who will not receive under the Plan the allowed amount of their claims in cash as of the "Effective Date" (as defined in the Plan).

23. "PETITION DATE" shall mean the date upon which the Debtor filed the voluntary Chapter 11 petition.

24. "PLAN" shall mean this Plan of Reorganization in its present form or as it may be amended or modified.

25. "PRIORITY CLAIM" shall mean any claim to the extent entitled to priority in payment under §507.

26. "PRO-RATA" shall mean the amount of cash or property to be paid or distributed to a claimant with respect to an Allowed Claim on a particular date, in accordance with the ratio, as of such date, of the dollar amount of the Allowed Claim of such person in the indicated class to the aggregate dollar amount of Claims in the indicated class (including, in each such calculation, the full amount of Disputed Claims in the class which have been asserted or are otherwise pending and which have not yet been allowed or otherwise disposed of).

27. "SECURED CREDITORS" shall mean all creditors who hold a lien, security interest or any other encumbrances which have been properly perfected as required by law with respect to property owned by the Debtor, to the extent of the value of the collateral.

28. "SUBSTANTIAL CONSUMMATION" shall mean the time the reorganized Debtors have commenced the distribution of initial Plan payments to all creditor classes.

29. "TAX CLAIM" shall mean any claim entitled to priority in treatment pursuant to §507(a)(8).

### III.  CLASSIFICATION AND TREATMENT OF CLASSES OF CLAIMS AND INTERESTS

The Debtor classifies the following classes of claims, indicating whether said class is impaired or unimpaired, and proposes the following treatment:

A. **Class 1 - Administrative Costs:**

(1) Description of Claims.  Class 1 consists of claims for any cost or expense of administration pursuant to Sections 503, 506, and 507 of the Bankruptcy Code.

The following claims of professionals will be paid subject to Court approval:

Oliver & Friesen, PLLC    Attorney for Debtor    To be determined by Court

(2) Impairment.  This class will be impaired.

(3) Treatment.  Administrative costs and expenses approved by the Court shall be paid in cash and in full including accruals to date of payment within ten days from the Effective Date of the Plan.

In the event that funds are not available to pay such costs and expenses within ten (10) days of the Effective Date of the Plan, then each holder of such a claim will receive payments from the Debtor until paid in full.  Such claims remaining unpaid ten days following the Effective Date shall accrue interest at a rate of eight percent (8%) per annum.

B. **Class 2 – Ad Valorem Taxes:**

(1) Description of Claims.  Class 2 consists of claims for taxes owed by the Debtor to any city, county, or other municipality or taxing entity entitled to tax the property of the Debtor based upon the value of the property assessed.  The Debtor is aware of the following claim in this Class:

New Hanover County Tax Administrator    Claim No. 1    $23,249.60

(2) Impairment.  This class will be impaired.

(3) Treatment.  The Debtor proposes to pay claims in this class from the sale of a portion of its real property, and with monthly payments over a period of five (5) years from the Effective Date.  Monthly payments shall commence on the fifteenth day of the first full month following the Effective Date, and shall include annual interest at the rate of nine percent (9%) per annum.  For feasibility purposes, the Debtor estimates that monthly payments will be $482.62.

4

C. **Class 3 – Tax Claims:**

(1) Description of Claims. Class 3 consists of claims against the Debtor for income taxes, withholding taxes, unemployment taxes and/or any and all other taxes levied or entitled to be levied against the Debtor by the Internal Revenue Service or the North Carolina Department of Revenue plus interest as allowed by law. *The Debtor is not aware of any claims in this class.*

(2) Impairment. This class will be impaired.

(3) Treatment. The Debtor proposes the following treatment:

**Costs and expenses of administration**, if any, shall be paid in cash and in full including accruals to date of payment within thirty (30) days from the Effective Date. *The Debtor does not anticipate that any such claims will be filed.*

**Unsecured priority tax claims**, if any, described in Section 507(a)(8) of the Bankruptcy Code shall be paid in full in monthly installments over a period not exceeding five (5) years from the Effective Date and payments shall commence on the fifteenth day of the first full month following the Effective Date, with interest at the statutory rate as of the Effective Date, currently four percent (4%) per annum. *The Debtor does not anticipate that such claims will be filed.*

**Secured claimants**, if any, shall retain their secured interest in the property of the Debtor. The taxing authority shall retain its lien and secured status as to the underlying secured tax liability, plus accruing interest at the statutory rate, currently four percent (4%) per annum, from the Effective Date. Debtor shall pay these claims over a period not to exceed five (5) years from the Effective Date beginning on the fifteenth day of the first full month following the Effective Date. *The Debtor does not anticipate any such claims will be filed.*

**Unsecured general tax claims,** if any, will be treated as provided below in the section relating to "General Unsecured Claims." *The Debtor does not anticipate any such claims will be filed.*

D. **Class 4 – Paragon Financial Investors, LLC ("Paragon"):**

(1) Description of Debt. On or about November 20, 2007, the Debtor executed a Deed of Trust, with a maximum principal amount of $3,000,000.00 (the "Deed of Trust"), granting Paragon a security interest in the Debtor's real property known as 6.3 acres located at 111 Cowan Street, Wilmington, North Carolina (the "Property"). Paragon has not filed a claim. As of the date of the Petition, the amount of the debt was approximately $3,000,000.00.

(2) Impairment. This class will be impaired.

5

   (3) <u>Treatment</u>.  The Debtor will treat the claim as a secured obligation in an amount equal to (1) all outstanding principal and interest due on the petition date; plus (2) costs and expenses approved by the Court pursuant to Section 506(b); less (3) any post-petition payments.  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, until its claim is paid in full.

The Debtor shall obtain a new appraisal of the Property securing the claim and obtain a new survey of the Property for the purpose of subdividing the Property into separate lots.  The Debtor shall surrender a portion of the Property securing the creditor's claim and convey such portion of the Property to the creditor in full satisfaction of the creditor's claim.

   **E.** **Class 5 – David A. Spetrino, Jr., George Laney, and Peter Fensel ("Spetrino")**

   (1) <u>Description of Debt</u>.  On or about November 19, 2007, the Debtor executed a Deed of Trust in favor of Waterfront Land Holdings, LLC, with a maximum principal amount of $1,750,000.00 (the "Deed of Trust"), granting Waterfront Land Holdings, LLC a second lien security interest in the Debtor's real property known as 6.3 acres located at 111 Cowan Street, Wilmington, North Carolina (the "Property").  The Deed of Trust was assigned by Waterfront Land Holdings, LLC to Spetrino by assignment recorded on December 20, 2007, in Book 5262, Page 1173, in the office of the New Hanover County, North Carolina Register of Deeds.  Spetrino has not filed a claim.  As of the date of the Petition, the amount of the debt was approximately $1,750,000.00.

   (2) <u>Impairment</u>. This class will be impaired.

   (3) <u>Treatment</u>.  The Debtor will treat the claim as a secured obligation in an amount equal to (1) all outstanding principal and interest due on the petition date; plus (2) costs and expenses approved by the Court pursuant to Section 506(b); less (3) any post-petition payments.  The creditor shall retain its lien with the priority thereof, as existed on the Petition Date pursuant to § 1129(b)(2)(A)(i)(I) of the Bankruptcy Code, on such portion of the Property that is retained by the Debtor after the Property is subdivided, until its claim is paid in full.  The creditor shall not retain a lien on such portions of the Property as is conveyed to the Class 4 creditor as provided in this Plan.

   The Debtor shall have a period not to exceed thirty-six months from the Effective Date ("Marketing Period") in which to liquidate sufficient property to pay Spetrino's allowed claim in full. During this time period, the Debtor shall pay to allowed claims the sum of 75% of the net proceeds of the sale of the Property, or any portion thereof, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the Property.  The Debtor will make no other payments to the creditor, and interest shall accrue at the rate of five percent (5%) per annum.  During this time period,

the Debtor shall keep the property taxes current and the property insured with the creditor as loss payee. If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of five percent (5%) per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

   **F.**  **Class 6 - General Unsecured Claims:**

   (1) <u>Description of Class</u>. This class consists of all allowed, undisputed, non-contingent unsecured claims listed in the Debtor's petition or as otherwise approved by the Court.

   (2) <u>Impairment</u>. This class will be impaired.

   (3) <u>Treatment.</u> The approximate total of general unsecured claims based on claims filed or scheduled as of the date of the filing of this Plan is $2,521,866.39. The Debtor estimates the non-insider unsecured claims to be $355,965.00. The Debtor proposes to pay the non-insider unsecured claims in full. The Debtor shall have a period not to exceed thirty-six months from the Effective Date ("Marketing Period") in which to liquidate sufficient property to pay all allowed non-insider unsecured claims in full. During this time period, the Debtor shall pay to allowed claims the sum of 75% of the net proceeds of the sale of the Property, or any portion thereof, in accordance with the priorities of the Bankruptcy Code and the priorities of the debts secured by the Property. The Debtor will make no other payments to the non-insider unsecured creditor, and interest shall accrue at the rate of five percent (5%) per annum. If the Debtor has not paid the claim by the end of the Marketing Period, the Debtor shall amortize the remaining principal balance of the debt in equal monthly payments at a fixed rate of interest of five percent (5%) per annum with a twenty-year amortization and a five-year call, plus the accrued and unpaid interest that accrues during the Marketing Period.

   The Debtor proposes to pay the insider general unsecured creditors in full, from the proceeds of the sale of the Debtor's real property, after all other allowed claims are paid in full. All such payments shall be distributed pro rata to allowed creditors within this Class.

   The Debtor may investigate and pursue avoidance actions pursuant to 11 U.S.C. §§547 and 548. Any funds collected through such actions will be distributed in accordance with the priorities established by the Bankruptcy Code and Orders of this Court.

   **G.**  **Class 7 – Equity Security Holders:**

   (1) <u>Classification</u>. This class consists of the pre-petition members of the Debtor, as follows:

7

    M&M Partnership, LLLP    80% membership interest
    Riverfront Holdings, LLC    20% membership interest

  (2)  <u>Impairment</u>.  This class will be unimpaired

  (3)  <u>Treatment.</u>  The equity security holder shall retain his ownership interests upon confirmation of the Debtor's Plan.

### IV.  TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

  Except as specified herein, all contracts which exist between the Debtor and any individual or entity, whether such contract be in writing or oral, which have not heretofore been rejected or heretofore been approved by Orders of the Court are hereby specifically rejected; provided, however, that this provision is not intended to reject and does not reject any agreement for the renewal or the extension of any loan or funds, presently binding and in effect between the Debtor and any secured creditor.  This provision is also not intended to reject and does not reject any agreements relating to the management of the Debtor's real property, or any agreements with the City of Wilmington.

### V.  MEANS OF IMPLEMENTATION AND EXECUTION OF PLAN

  A.  <u>Assumption of Liabilities.</u>  Except as otherwise provided herein, Reorganized Debtor shall assume liability for and the obligations to make the distributions required to be made to all of the Classes described in Articles II - V of the Plan.

  B.  The Debtor proposes to make payments under the plan from: funds on hand; rental proceeds; and net proceeds from the sale of any assets, if any; and any funds derived from the Debtor's income.

  C.  Distributions under the Plan shall be made on the Distribution Date; provided however, that Court approved professionals may be paid as such fees and expenses are approved by the Court.  Any distribution required to be made hereunder on a day other than a business day shall be made on the next succeeding business day.

  D.  <u>De Minimis Distributions</u>.  No distribution of less than fifty dollars ($50.00) shall be required to be made to any holder of an allowed unsecured claim.  Instead, the Debtor shall have the option of retaining such funds to be distributed at the time of the final distribution in accordance with the Plan.

  E.  <u>Unclaimed Property</u>.  If any distribution remains unclaimed for a period of 90 days after it has been delivered, or attempted to be delivered, such unclaimed property shall be forfeited by such holder of the claim and the Disbursing Agent shall not attempt

8

to make any further distribution of such holder of the claim. Undistributed property shall be returned to the Debtor for distribution in accordance with the Plan.

F. The Debtor will execute and deliver all documentation to the Bankruptcy Court and to all parties in interest who are entitled to receive the same as required by the terms of the Plan and the Bankruptcy Code.

G. The Debtor shall take such other action as necessary to satisfy the other terms and requirements of the Plan and the Bankruptcy Code.

H. Except as expressly stated in the Plan, or allowed by a Final Order of the Bankruptcy Court, no interest, penalty, or late charge shall be allowed on any claim subsequent to the Petition Date, unless otherwise required by the Code. No attorney's fees or expenses shall be paid with respect to any claim except as specified herein or as allowed by a Final Order of the Court.

I. Confirmation of this plan shall constitute a finding that the Debtor does not waive, release, or discharge, but rather retains and reserves any and all pre-petition claims and any and all post-petition claims that it could or might assert against any party or entity arising under or otherwise related to any state or federal statute, state or federal common law, and any and all violations arising out of rights or claims provided for by Title 11 of the United States Code, by the Federal Rules of Bankruptcy Procedure, or by the Local Rules of this Court, including all rights to assert and pursue any and all avoidance actions, preference actions, and any other actions pursuant to 11 U.S.C. §§545, 546, 547, 548, and 550, except to the extent such avoidance actions, preference actions, or other actions were assigned to a creditor(s) as part of the Debtor's Plan. Further, the Debtor retains all rights to assert and pursue all claims under 11 U.S.C. §542, including without limitation actions to seek turnover of estate assets, actions to recover accounts receivable, and/or actions to invalidate setoffs.

J. Administrative claims unpaid on the Effective Date will be paid from funds on hand or as the parties otherwise agree.

K. All objections to claims, fee applications, and adversary proceedings will be filed with the Court within 60 days of the Effective Date; provided however, that the Debtor retains the right to object or otherwise pursue any claims against secured creditors relating to the payoff and/or satisfaction of their secured claims.

L. <u>Revesting of Assets</u>. The revesting of Assets in the Reorganized Debtor shall be subject to the rights and duties of the Debtor and the Reorganized Debtor as provided in this Plan. As of the Effective Date, the Plan shall revest in the Debtor all of the Assets of the Debtor and without further documentation, all of the Assets and assumed liabilities of the Debtor, together with all of the related rights, powers, obligations and duties of the Debtor as provided by the United States Bankruptcy Code, this Plan, all orders of the United States Bankruptcy Court, all equitable rights and all laws shall be transferred to the Reorganized Debtor as a successor of the Debtor in all things.

M. <u>Injunction</u>. From and after the Confirmation Date, all holders of "Claims" (including, without limitation, Secured Claims, General Unsecured Claims, and all Priority Claims) against the Debtor, the Debtor in Possession, or Reorganized Debtor are permanently restrained and enjoined (a) from commencing or continuing in any manner, any action or other proceeding of any kind with respect to any such Claim against the Debtor, the Assets, or Reorganized Debtor, (b) from enforcing, attaching, collecting, or recovering by any manner or means, any judgment, award, decree, or order against the Debtor, Reorganized Debtor, or the Assets, (c) from creating, perfecting, or enforcing any encumbrance of any kind against the Debtor, Reorganized Debtor or the Assets, (d) from asserting any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtor, and (e) from performing any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan; provided, however, that each holder of a contested Claim may continue to prosecute its proof of Claim in accordance with the Plan and all holders of Claims shall be entitled to enforce their rights under the Plan.

N. <u>Revocation of Plan.</u> The Debtor has reserved the right to revoke and withdraw this Plan before the entry of the Confirmation Order. If the Debtor revokes or withdraws this Plan, or if confirmation of this Plan does not occur, then, with respect to the Debtor, this Plan shall be deemed null and void and nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtor, as the case may be, or any other Person or to prejudice in any manner the rights of such Debtor, as the case may be, or Person in any further proceedings involving such Debtor.

O. <u>Authority of the Debtor</u>. The Debtor shall have the authority to implement any term or provision over this Plan. To the extent that any right is granted to the Debtor under the Plan, then the Debtor shall have authority for so long as the corporation is in existence to carry out any and all acts necessary to fulfill the terms of the Plan. Any authority granted to the Debtor pursuant to this Plan, shall be construed as authority granted to the Debtor.

P. <u>Organizational Documents</u>. To the extent the Debtor believes that it is in the best interest of the Reorganized Debtor to do so, the Debtor is authorized to amend organizational operating documents of the Reorganized Debtor as necessary (i) to satisfy the provisions of this Plan, and (ii) to the extent necessary to prohibit the issuance of nonvoting equity securities as required by §1123(a)(6) of the Bankruptcy Code. To the extent any attempt is made to amend the Claim without court authority, after the Effective Date of the Plan, the Reorganized Debtor shall not be held responsible for any actions taken including distributions to Creditors inconsistent with Claims filed or amended after the Effective Date.

Q. <u>Exemption from stamp tax or transfer tax.</u> Any transfers done pursuant to the confirmed Plan shall not be subject to any stamp tax or similar tax, pursuant to 11 U.S.C. §1146.

## VI. SIMILAR TREATMENT FOR EACH CLAIM WITHIN A CLASS

10

The claims stated herein, by modification, Court Order, or other legally appropriate manner, might be modified throughout the course of payment under this Plan. The Debtor, upon full payment as called for under the notes and deeds of trust, shall be entitled to have the note marked paid and satisfied and the deed of trust canceled as a matter of record, by the Trustee, or by appropriate application to this Bankruptcy Court, and upon a showing that the full amount of the monthly payments were made by the Debtor.

## VII.  PROVISIONS GOVERNING DISTRIBUTIONS

A. <u>Delivery of Distributions in General</u>.  Distributions to holders of allowed claims shall be made:  (i) at the addresses set forth in the proofs of claim filed by such holders; (ii) at the addresses set forth in any written notices of address change submitted to the Court or Attorney for the Debtor after the date on which any related proof of claim was filed; or, if the information described in clauses (i) or (ii) is not available, (iii) at the addresses reflected in the Debtor's schedules of liabilities.

B. <u>Distribution Dates</u>.  It is the intent of this Plan that the distribution shall occur as early as practicable following the Effective Date.

C. <u>Cure Period</u>.  The failure by Reorganized Debtor to timely perform any term, provision or covenant contained in this Plan shall not constitute an Event of Default unless and until Reorganized Debtor has been given thirty (30) days written notice of the alleged default and provided an opportunity to cure.  Until the expiration of the thirty (30) day cure period, Reorganized Debtor shall not be deemed to be in default, and any performance or actions taken during such thirty (30) day cure period shall be considered timely for all purposes.  Such written notice pursuant to the Plan provisions and the passage of the thirty (30) day cure period shall constitute conditions precedent to bringing or filing any contested action by any person to enforce any right granted under this Plan.

## VIII.  ACCEPTANCE OR REJECTION OF PLAN;
## EFFECT OF REJECTION BY AN IMPAIRED CLASS

A. <u>Each Impaired Class Entitled to Vote Separately</u>.  Each impaired class of claims shall be entitled to have the holders of claims therein vote separately as a class to accept or reject the Plan.

B. <u>Acceptance by a Class of Creditors</u>.  Consistent with §1126(c) of the Bankruptcy Code, and except as provided in §1126(e) of the Bankruptcy Code, a class of claims shall have accepted the Plan if the Plan is accepted by holders of at least two-thirds (2/3) in dollar amount and more that one-half (1/2) in number of the allowed claims of that class that have timely and properly voted to accept or reject the Plan.

C. <u>Claimants Entitled to Vote</u>.  Holders of impaired claims shall be entitled to vote if:

(1) Such claim has been filed against the Debtor in a liquidated amount or has been listed on the Debtor's schedules other than as contingent, unliquidated or disputed, and as to which no proof of claim has been filed. The claim shall be allowed solely for the purpose of voting on the Plan in the amount in which such claim has been filed or listed on the Debtor's schedules;

(2) Such claim has been filed against the Debtor or listed on the Debtor's schedules and is the subject of an existing objection filed by the Debtor, and is temporarily allowed for voting purposes by order of the Court in accordance with Bankruptcy Rule 3018;

(3) Such claim has been filed in an undetermined amount, in which case the creditor shall not be entitled to vote unless the Debtor and the holder of the claim agree on an amount for voting purposes or the Court enters an order setting the amount of the claim that the creditor may ballot.

(4) Any entity holding two or more duplicate claims shall be entitled to vote only one claim.

D. <u>Confirmation Hearing</u>. The Court will set a hearing on the confirmation of the Plan to determine whether the Plan has been accepted by the requisite number of creditors and whether the other requirements for confirmation of the Plan have been satisfied.

E. <u>Acceptances Necessary to Confirm the Plan</u>. At the hearing of confirmation of the Plan, the Court shall determine, among other things, whether the Plan has been accepted by each impaired class. Under §1126 of the Bankruptcy Code, an impaired class of Creditors is deemed to accept the Plan if at least two-thirds (2/3) in amount and more than one-half (1/2) in number vote to accept the Plan. Further, unless there is unanimous acceptance of the Plan by an impaired class, the Court must also determine that class members will receive property with a value, as of the Effective Date of the Plan, that is not less than the amount that such class member would receive or retain if the Debtor was liquidated as of the Effective Date of the Plan under Chapter 7 of the Bankruptcy Code.

F. <u>Confirmation of Plan Without Necessary Acceptances</u>. The Bankruptcy Code provides that the Plan may be confirmed even if it is not accepted by all impaired Classes. In order to be confirmed without the requisite number of acceptances of each impaired class, the Court must find that at least one impaired class has accepted the Plan without regard to the acceptances of insiders, and the Plan does not discriminate unfairly against, and is otherwise fair and equitable, to such impaired class. In the event that any class votes against the plan, the Debtor hereby requests and moves the Court under the provisions of this Plan outlined in Section IX herein, for confirmation pursuant to the "cramdown" provisions of §1129(b) of the Bankruptcy Code. In connection therewith,

the Debtor shall be allowed to modify the proposed treatment of the allowed claims in any class that votes against the Plan consistent with §1129(b)(2)(A).

## IX.  "CRAMDOWN" FOR IMPAIRED CREDITORS NOT ACCEPTING THE PLAN

In respect to any class of creditors impaired but not accepting the Plan by the requisite majority in number or two-thirds in amount, the proponent of this Plan requests the Court to find that the Plan does not discriminate unfairly and is fair and equitable in respect to each class of claims or interests that are impaired under the Plan and that the Court confirm the Plan without such acceptances by the said impaired classes.  The Debtor will also request that the Court establish a value for any assets, the value of which is in dispute between the Debtor and any secured creditor, at a valuation hearing under Section 506 of the Bankruptcy Code, to be scheduled at the same time as the hearing on confirmation of the Plan.

## X.  EFFECT OF CONFIRMATION

A.   Except as otherwise provided in the Plan, the confirmation of the Plan vests all of the property of the estate in the Debtor.

B.   *Injunction*.  As of the Confirmation Date, except as otherwise provided in the Plan or the Confirmation Order, all persons that have held, currently hold, or may hold a claim, equity interest, or other debt or liability that is treated pursuant to the terms of the Plan or that is otherwise enjoined pursuant to Section 1141 of the Code, are enjoined from taking any of the following actions on account of any such claims, equity interests, debtors or liabilities, other than actions brought to enforce obligations under the Plan: (i) commencing or continuing in any manner any action or other proceeding; (ii) enforcing, attaching, collecting, or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting, or enforcing any lien or encumbrance; (iv) asserting a setoff or right of recoupment of any kind against any debt, liability, or obligation; and/or (v) commencing or continuing, in any manner or in any place, any action that does not comply with or is inconsistent with the provisions of the Plan or the Confirmation order. Notwithstanding the foregoing, the Plan does not release or waive any claims it may have against any party in interest.

## XI.  RELEASE OF TITLE TO PROPERTY

A.   *Vehicles*.  Upon the satisfaction or other discharge of a security interest in a motor vehicle, mobile home, or in any other property of this estate in bankruptcy for which the certificate of title is in the possession of the secured party, the secured party shall within ten (10) days after demand and, in any event, within thirty (30) days of receipt of the payment in full pursuant to the Plan, execute a release of its security interest on the said title or certificate, in the space provided therefore on the certificate or as the Division of Motor Vehicles prescribes, and mail or deliver the certificate and release to the Debtor.  Confirmation of this Plan shall impose an affirmative and direct

duty on each such secured party to comply with the provision. This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this Plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The debtor(s) specifically reserve the right to file a motion to reopen this case under Section 350 of Title 11 of the United States Code to pursue the rights and claims provided for herein.

      B.    <u>Real Property</u>. Pursuant to N.C.G.S. § 45-36.9, upon the satisfaction or other discharge of a security interest in real property for which a creditor holds a properly secured mortgage, the secured party shall within thirty (30) days after demand or within thirty (30) days of payment in full pursuant to the Plan, submit for recording with the Office of the Register of Deeds for the applicable County a satisfaction of its security interest and mail or deliver the recorded satisfaction document or documents to the Debtor. The failure of any such party to comply with this section shall results in the imposition of statutory damages of $1,000.00, actual damages, costs and legal fees as provided for by Section 45-36.9(c) of the N.C. General Statutes. Confirmation of this Plan shall impose an affirmative and direct duty on each such secured party to comply with this provision. This provision shall be enforced in a proceeding filed before the Bankruptcy Court and each such creditor consents to such jurisdiction by failure to file any timely objection to this plan. Such an enforcement proceeding may be filed by the Debtor in this case either before or after the closing of this case. The Debtor specifically reserves the right to file a motion to reopen this case under Section 350(b) of Title 11 of the United States Code to pursue the rights and claims provided for herein including all remedies for damages and attorney fees under applicable State and Federal statutes.

## XII. APPLICATION OF PLAN PAYMENTS

      A.    All payments made by the Debtor shall be applied as indicated in the respective treatment for each creditor, or if no such application of payments is specified, then payments shall be applied to principal and interest on a monthly basis according to the amortization schedule proposed for each creditor. In the event that a creditor is entitled to costs and/or attorneys fees post-petition under Section 506(b) of the Code, such creditor must file an application in accordance with the Code and/or Bankruptcy Rules pertaining to approval of costs and/or attorney fees prior to such costs and/or attorneys fees becoming part of the creditor's allowed claim. Confirmation of the Plan shall impose an affirmative duty and legal obligation on the holders and/or the servicers of any claims secured by liens, mortgages and/or deeds of trust to apply payments in the manner set forth in the Plan in accordance with Section 524(i).

      B.    Confirmation of the plan shall impose a duty on the holders and/or servicers of claims secured by liens on real property to apply the payments received from the Debtor to the month in which they were made under the plan or directly by the Debtor, whether such payments are immediately applied to the loan or placed into some type of suspense account and to otherwise comply with 11 U.S.C. Section 524(i).

## XIII.  RETENTION OF JURISDICTION

The Bankruptcy Court shall retain jurisdiction of these proceedings pursuant to and for the purposes of Sections 105(a) and 1127 of the Code and for, without limitation, the following purposes, inter alia:

1. to determine any and all objections to the allowance of claims and/or interests;

2. to determine any and all applications for allowance of compensation for periods prior to or after the Confirmation Date;

3. to determine any and all applications pending on the Confirmation Date for the rejection and disaffirmance or assumption or assignment of executory contracts and the allowance of any claim resulting therefrom;

4. to determine all controversies and disputes arising under or in connection with the Plan;

5. to determine all applications, adversary proceedings and litigated matters pending on the Confirmation Date;

6. to effectuate payments under, and performance of, the provisions of the Plan, including, but not limited to, future sales of personal and real property retained by the Estate;

7. to determine such other matters and for such other purposes as may be provided for in the confirmation order;

8. to determine all disputes regarding property of the estate;

9. to establish and adjust procedures for the orderly administration of the estate;

10. to determine matters that are subject to proceedings duly removed to the Bankruptcy Court; and

11. to replace the Debtor-in-Possession with a Trustee for good cause shown.

## XIV.  MISCELLANEOUS PROVISIONS

A. Survival of Terms.  The covenants, representations and agreements made in this Plan shall survive the Confirmation Date and the transactions contemplated herein.

B.  <u>Successors Bound</u>.  This Plan shall on the Consummation Date be binding upon and inure to the benefit of the respective heirs, successors and assigns of the Debtor, and the holders of claims and interests.

C.  <u>Controlling Law</u>.  This Plan shall be read and construed and take effect in all respects in accordance with the law as set forth in the United States Bankruptcy Code and the Rules promulgated thereunder.

D.  <u>Further Assurance</u>.  If at any time, the Debtor shall consider, or be advised, that any further releases, assurances or documents are reasonably necessary or desirable to carry out the provisions hereof, and the transactions contemplated herein, the holders of claims and the holders of interest shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions hereof.

E.  <u>Liens</u>.  All liens remaining in favor of any creditor in this action against the real property conveyed prior to the filing of the petition shall be deemed to be released upon confirmation of the Plan.  The Debtor shall request and all parties shall provide such additional documentation as may be necessary to effectuate these releases.

F.  <u>Incorporation of Disclosure</u>.  All the terms and conditions of the Disclosure Statement are incorporated herein by reference.

(This space intentionally left blank.)

Respectfully submitted, this the 21st day of April, 2010.

                              s/George Mason Oliver
                              GEORGE MASON OLIVER
                              N.C. State Bar #26587
                              OLIVER & FRIESEN, PLLC
                              P.O. Box 1548
                              New Bern, NC  28563-1548
                              (252) 633-1930
                              Attorneys for Debtor


Zephyr Land Holdings, LLC

By: s/Charles Schoninger
Charles Schoninger, General Partner of
M&M Family Partnership, LLLP, Manager
of Zephyr Land Holdings, LLC