**SO ORDERED.**

**SIGNED this 03 day of November, 2011.**



_____
**Stephani W. Humrickhouse
United States Bankruptcy Judge**

_____

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## WILMINGTON DIVISION

IN RE:                                                          CASE NO.

**ZEPHYR LAND HOLDINGS, LLC**                   10-00437-8-SWH

        **DEBTOR**

### ORDER DENYING CONFIRMATION OF CHAPTER 11 PLAN

The matter before the court is the confirmation of the plan of reorganization filed by the debtor on April 21, 2010 and as orally modified at hearing. Hearings were held on January 19, 2011, January 20, 2011, August 23, 2011, August 31, 2011, and September 9, 2011. For the reasons that follow, confirmation will be denied.

### BACKGROUND

The debtor is a North Carolina limited liability company engaged in the business of owning and developing approximately 6.3 acres of land located at 111 Cowan Street in Wilmington, North Carolina (the "Property"). The debtor has two members: M&M Family Partnership, LLP ("M&M") with an 80% interest, and Riverfront Holdings, LLC ("Riverfront Holdings") with a 20% interest. The Property is part of a development plan involving adjacent tracts owned by several other entities (Exhibit I - Northern Riverfront Phasing Plan). The debtor and Charles J. Schoninger

("Schoninger"), the member/manager of M&M, borrowed $3,000,000 from Paragon Financial Investors, LLC, a Colorado limited liability company ("Paragon"), on November 21, 2007, and secured that loan with a first priority deed of trust on the Property.

David A. Spetrino, Jr. ("Spetrino"), George Laney ("Laney") and Peter Fensel ("Fensel") are the holders of a second priority deed of trust on the Property (the "Junior Deed of Trust") securing an indebtedness in the amount of $1,750,000. Spetrino, Laney and Fensel are also members of Riverfront Holdings, LLC.[1] Spetrino is the member/manager and registered agent of Riverfront Holdings, LLC.

The debtor defaulted on the Paragon indebtedness and Paragon commenced foreclosure proceedings. The debtor initiated this chapter 11 case prior to the expiration of the foreclosure upset period and filed a plan of reorganization on April 21, 2010, which provided, <u>inter</u> <u>alia</u>, for the surrender of a portion of Paragon's collateral in full satisfaction of its indebtedness. Paragon objected to both the plan and disclosure statement on several bases, including the failure of the debtor to specifically identify what portion of the collateral was to be surrendered. Prior to the conclusion of confirmation hearing (which spanned nine months), the debtor did modify its plan treatment of the Paragon claim to provide for the surrender of Lots 1 and 2.[2]

---

[1] Schoninger testified at the hearing on August 23, 2011, that Spetrino, Laney and Fensel are the members of Riverfront Holdings, LLC. However, the Limited Liability Company Annual Reports filed by Riverfront Holdings, LLC with the North Carolina Secretary of State's Office since 2007 appear to contradict that testimony, at least in part. The 2007 Report indicates that Steven Shuttleworth, David White, Michael Cook, Peter Fensel, George Laney and David Spetrino are members of the LLC. The 2008 Report indicates that all of the "2007 members" remained as members except Laney. The 2009 Report indicates that there is only one member: Spetrino; as does the 2010 Report.

[2] During the August 23, 2011 hearing, counsel for the debtor represented that the debtor intended to surrender either Lot 1 or Lot 2, but if the court found one lot insufficient to provide the indubitable equivalent of Paragon's claim, the debtor would surrender both Lots 1 and 2 in their

The debtor filed a summary of ballots which indicates that Classes 1, 5, 6 and 7 accepted the plan and that Classes 2[3] and 4 rejected the plan. There were no ballots cast in Class 3. The debtor maintains that it has at least one impaired accepting class and can proceed to cram down Paragon's Class 4 claim pursuant to § 1129(b)(2)(A)(iii) by providing it with the indubitable equivalent of its claim through the surrender of Lots 1 and 2 of the Property.

Paragon has objected to confirmation on two main grounds: 1) the debtor does not have a qualifying accepting impaired class to proceed to cram down, and 2) if the debtor is able to proceed to cram down, the surrender of Lot 1 and Lot 2 will not provide Paragon with the indubitable equivalent of its claim. The court finds the first ground dispositive as set out more specifically below.

## DISCUSSION

Section 1129(a) sets out the requirements for confirmation of a chapter 11 plan, including the general rule under subsection (a)(8) that all impaired classes must accept the plan. Section 1129(b)(1) provides that the debtor can confirm a plan if all the requirements of § 1129(a) except § 1129(a)(8) are satisfied as long as the plan does not discriminate unfairly and is fair and equitable to the classes not accepting the plan. In re Bryson Properties, XVIII, 961 F.2d 496, 500 (4th Cir. 1992). However, § 1129(a)(10) must still be satisfied, which requires that at least one

---

entirety. By email dated September 19, 2011 to the court, Paragon's counsel, and the bankruptcy administrator, the debtor clarified that its proposal is to give both Lots 1 and 2 to Paragon in full satisfaction of its claim.

[3] During the January 19, 2011 hearing, counsel for the debtor announced the debtor's intention to treat the Class 2 claim holder, New Hanover County, as provided for by the Bankruptcy Code, i.e., with an unimpaired treatment. A review of the plan indicates that it provides for monthly payments over a period of 5 years beginning shortly after the plan's effective date. As the Code requires completion of payments within 5 years of the order for relief, the court assumes the debtor orally modified the plan treatment accordingly. See 11 U.S.C. § 1129(a)(9)(C)(ii).

impaired class of creditors accept the plan. See 11 U.S.C. § 1129(a)(10). A qualified accepting class for purposes of § 1129(a)(10) is determined without consideration of the votes of insiders. In this case, the debtor cannot proceed to cram down and thereby test the alleged indubitable equivalent value of the proposed surrendered property unless it can show that it has an accepting impaired class.

The debtor maintains that there is an accepting impaired class, thus authorizing the court to consider cram down under § 1129(b). The Summary of Ballots filed by the debtor indicates that Classes 1, 5, 6, & 7 have accepted the plan. The debtor concedes that the Class 1 treatment is unimpaired and that the Class 7 equity security holders class cannot be counted in accordance with § 1129(a)(10). The focus, therefore, must be on Classes 5 and 6 to determine whether either of those classes can be deemed accepting classes under § 1129(a)(10), i.e., are they accepting classes without the votes of insiders.

Class 5 consists of Spetrino, Laney, and Fensel, holders of the Junior Deed of Trust on the Property. Class 6 is comprised of the debtor's general unsecured creditors. The following creditors in that class cast ballots in favor of the plan:

| Creditor | Claim |
| --- | --- |
| M&M Family Partnership, LLP | $ 954,208.00 |
| Riverfront Holdings, LLC | $ 859,000.00 |
| Riverfront Holdings, LLC[4] | $ 352,693.39 |
| Zephyr Development Corp. | $ 353,840.00 |

No ballots in Class 6 were cast against the plan.

---

[4] Riverfront Holdings, LLC cast two ballots, apparently representing two claims, as the ballot identifying the $859,000.00 claim indicates "cost recovery for shared infrastructure improvements," and the ballot for the $352,693.39 claim indicates "loan from RFH to Zephyr Land Holdings."

The term "insider" is defined non-exclusively for corporations in § 101(31)(B). Limited liability companies are assessed in a similar fashion to corporations for determination of insider status. See Northern Outer Banks Assocs., LLC, 2010 Bankr. LEXIS 3974, at *5, 2010 WL 4630348, at *2 (Bankr. E.D.N.C. Nov. 8, 2010); 2 Collier on Bankruptcy ¶ 101.09, at 101-69 (Alan N. Resnick & Henry J. Sommer eds. 16th ed. rev. 2009) (citing cases); see also 11 U.S.C. § 101(9)(iv).

> The term insider includes –
>
> > (B) if the debtor is a corporation –
> >
> > > (i) director of the debtor;
> > > (ii) officer of the debtor;
> > > (iii) person in control of the debtor;
> > > (iv) partnership in which the debtor is a general partner;
> > > (v) general partner of the debtor; or
> > > (vi) relative of a general partner, director, officer, or person in control of the debtor.
> >
> > \*   \*   \*
> >
> > (E) affiliate, or insider of an affiliate as if such affiliate were the debtor; and
> > (F) managing agent of the debtor.

11 U.S.C. § 101(31)(B). Section 101(2) defines "affiliate" as:

> (A) entity that directly or indirectly owns, controls, or holds with power to vote, 20 percent or more of the outstanding voting securities of the debtor, other than an entity that holds such securities –
>
> > (i) in a fiduciary or agency capacity without sole discretionary power to vote such securities; or
> > (ii) solely to secure a debt, if such entity has not in fact exercised such power to vote.

11 U.S.C. § 101(2).

Courts have held that "in addition to the individuals and the entities actually named [in § 101(31)], the term [insider] also encompasses anyone with a sufficiently close relationship with

the debtor that his conduct is made subject to closer scrutiny than those dealing at arm's length with the debtor." Northern Outer Banks Assocs., LLC, 2010 Bankr. LEXIS 3974, at *4, 2010 WL 4630348, at *2 (Bankr. E.D.N.C. Nov. 8, 2010) (citations omitted); In re Broumas, Nos. 97-1182 & 97-1183, 1998 U.S. App. LEXIS 3070, at *21, 1998 WL 77842, at *7 (4th Cir. 1998) (citations omitted); In re Krehl, 86 F.3d 737, 741 (7th Cir. 1996). This category of creditors is sometimes referred to as "non-statutory insiders." In re Prosperity Park, LLC, 2011 Bankr. LEXIS 1852, at *9, 2010 WL 1878210, at *3 (Bankr. W.D.N.C. May 17, 2011) (Defining "non-statutory insiders" as those "who fall within the definition of insider but outside of any of the enumerated categories"). For example, "insider status may be based on 'a professional or business relationship with the debtor,' where the conduct of the creditor or the debtor is 'attributable simply to affinity rather than to the course of business dealings between the parties.'" Three Flint Hill Ltd. Pshp. v. Prudential Ins. Co. (In re Three Flint Hill Ltd. Pshp.), 213 B.R. 292, 300-01 (D. Md. 1997) (citation omitted).

The debtor's plan describes Class 5 as being the claim of Spetrino, Laney and Fensel, who are the holders of the Junior Deed of Trust on the Property. The Class 5 claimants did not file a proof of claim and the court must therefore rely upon the debtor's description of the class in its plan and on Schedule D. The plan describes the class as composed of three individuals – not a partnership, joint venture, or other entity.[5] Schedule D indicates the name of the holder of the claim as "David A. Spetrino, Jr., et al." The ballot is signed by Spetrino as the "member/manager" of

---

[5] The class is set out as follows: **Class 5 - David A. Spetrino, Jr., George Laney, and Peter Fensel ("Spetrino")** . The description of the debt recites the existence of a second deed of trust on the Property in favor of Waterfront Land Holdings, LLC which was subsequently assigned to Spetrino. Inasmuch as "Spetrino" appears to be a defined word which includes Laney and Fensel, the court will interpret it as such. There was no proof of claim filed or assignment introduced from which such a position could be confirmed or contradicted.

6

"David A. Spetrino, Jr., et al." A review of the records at the North Carolina Secretary of State's website, however, reveals that "David A. Spetrino, Jr." is not a registered corporate entity. The only record found on the website containing the name "Spetrino" is that of the entity, "Dave Spetrino Properties, Inc.," which was suspended in 2004 and administratively dissolved as of June 21, 2011.[6] There is nothing in the record indicating that Dave Spetrino Properties, Inc. is the holder of a secured claim in this case. There is also nothing in the record to show that Spetrino has authority to vote the class or vote anything but his own individual interest in the class. The ballot is inconsistent on its face: It purports to vote the claim described by the debtor itself as being owned by three individuals; but it is signed by one individual ostensibly acting as the member/manager of a limited liability company which has no association with the debt and for which there is no evidence of existence in the public record. Giving the debtor the most generous interpretation of this ambiguous document, the court will consider it the individual vote of Spetrino who is a holder of an interest in the debt which comprises Class 5.[7] As is discussed below, this interpretation of the ballot does not yield an accepting impaired class if Spetrino is determined to be an insider.

Although Spetrino may not technically fall into the statutory insider definition, the court concludes that Spetrino does in fact fall into the non-statutory insider definition. Spetrino is not only one of the holders of the Junior Deed of Trust, but he may be the only member of Riverfront

---

[6] Dave Spetrino Properties, Inc. was suspended for failure to comply with North Carolina Department of Revenue requirements and administratively dissolved for failure to file an annual report.

[7] Without such interpretation, the court could disregard the ballot entirely. Spetrino is not able to vote on behalf of Laney, Fensel or any entity in which he, Laney or Fensel are members without evidence of express authority to do so. According to Rule 3003, for purposes of voting pursuant to Rule 3018, an entity who is not the holder of a security must file a statement setting forth facts which entitle it to be treated as the record holder of the claim. No such statement was attached to the ballot or is otherwise in the record.

Holdings, LLC, the 20% member of the debtor.[8] Notwithstanding the fact that a non-voting membership is not sufficient to deem Riverfront Holdings, LLC a statutory affiliate of the debtor, and thus its members statutory insiders of the debtor, there are significant other factors, which result in a determination that Riverfront Holdings, LLC and its member(s) are insiders of the debtor:

1. The debtor and Riverfront Holdings, LLC, respectively, own contiguous properties which are part of a development plan dependent on joint efforts and successes.[9]

2. Riverfront Holdings, the debtor, and several other entities with overlapping ownership interests are collectively defined as the "Developer" in the Development Agreement with the City of Wilmington.[10] That agreement provides for the cooperative development of four interdependent phases, subject to a development schedule pursuant to which each party must coordinate commencement and interim completion dates (Exhibit R).

3. Riverfront Holdings and the debtor are also both parties to the Cost Recovery Agreement (Exhibit S) and the stormwater Restrictive Covenant (Exhibit N). Although Riverfront Holdings recently assigned its rights under the Cost Recovery Agreement to an agent of SunTrust Bank as part of the foreclosure of Riverfront Holdings' contiguous property (see Exhibit U), the agreement provides that Riverfront Holdings, LLC will complete certain development work "that benefits [the debtor's Property]," that easements are granted by the

---

[8] See footnote 1, above. The records of the North Carolina Secretary of State's Office indicate that as far back as the 2009 Annual Report filing for Riverfront Holdings, LLC, Spetrino was the sole named and reported member of the limited liability company.

[9] Since the filing of this case, the property adjoining that of the debtor, and previously owned by Riverfront Holdings, LLC was foreclosed upon by SunTrust Bank on July 22, 2011. See Exh. CC, Final Rep. and Acct. of Foreclosure Sale.

[10] The other parties to the agreement are Riverfront Holdings II, LLC and City Marina Wilmington, LLC, and Spetrino is a member of these entities as well.

debtor to Riverfront Holdings across the Property, and that the debtor will reimburse Riverfront Holdings for such work upon sale of the debtor's property or issuance of a building permit. The agreement further provides that any unpaid reimbursement constitutes a lien upon the Property. The Cost Recovery Agreement is a defined term in the debtor's Operating Agreement (Exhibit T). The court can only conclude that the very creation of the debtor was dependent upon joint efforts with and accommodations from Riverfront Holdings. The stormwater permit issued by the North Carolina Department of Environment and Natural Resources, Division of Water Quality was issued to Riverfront Holdings and covers both the property owned by Riverfront Holdings and the debtor. In fact, the built upon area permitted is shared by the two entities - the more one uses, the less the other has to use (Exhibit LL).

4. The debtor's Operating Agreement (Exhibit T) contains an Exhibit A which indicates that its Class B member is: Riverfront Holdings, LLC; *c/o Charles J. Schoninger; 720 North Third Street, Suite 202; Wilmington, NC 28401*– the managing member of the only voting member of the debtor with the same address listed for the debtor in the Operating Agreement. The Operating Agreement is dated November 2007, well after the first Limited Liability Annual Report for Riverfront Holdings was filed which named six other individuals as members. The court can only conclude that the recital of Mr. Schoninger as the contact person for Riverfront Holdings in the debtor's Operating Agreement, when clearly other individuals could have been listed, indicates a very close relationship between Schoninger and Riverfront Holdings, and one which must be subjected to close scrutiny.

5.  Schoninger testified that Spetrino has been a "very good partner" of his in many entities and projects. Schoninger Testimony, Jan. 20, 2011.

The relationships among Riverfront Holdings and the debtor and Spetrino are various and intertwined. For all intents and purposes, Spetrino is a partner of the individual who controls M&M, the 80% member of the debtor. This relationship involving at least one of the junior lien holders is more than sufficient to constitute that of an insider. The Class 5 ballot signed by Spetrino can, therefore, not be counted for purposes of complying with § 1129(a)(1) and § 1129(a)(10).

The only other class of creditors to consider is Class 6 – general unsecured creditors. Clearly, the vote of M&M should not be counted. M&M is the 80% voting member of the debtor and thus is a statutory insider. Zephyr Development Corp. is a corporation wholly owned by Schoninger who is the person in control of the debtor – the managing member of the 80% voting member of the debtor who concededly makes the decisions for the debtor. Zephyr Development Corp. is registered in both Colorado and North Carolina; Schoninger is listed as the President and only principal in both states. Zephyr Development Corp. is a statutory affiliate insider pursuant to § 101(31), and its vote cannot be counted. The relationship between Riverfront Holdings, LLC and the debtor has been discussed. Riverfront Holdings was engaged in what is akin to a joint venture

with the debtor.[11] Its either sole member or only active member is an insider.[12] Riverfront Holdings is a non-statutory insider. There are no non-insider accepting creditors in Class 6.

There being no accepting impaired class, the court is not authorized to consider the debtor's proposed cram down of Paragon under § 1129(b) and confirmation must be denied.

**SO ORDERED**.

**END OF DOCUMENT**

---

[11] "A joint venture is an association of persons with the intent, by way of either express or implied contract, to engage in and carry out a single business venture for joint profit for which purpose such persons combine their property, money, efforts, skill and knowledge without creating a partnership or a corporation." 46 Am. Jr. 2d Joint Ventures § 1.

Riverfront Holdings, the debtor, and other related entities were engaged in a common project to develop a portion of the Wilmington riverfront, for profit. Each party contributed to the endeavor (Exhibit I - Northern Riverfront Phasing Plan).

[12] Schoninger testified that he had little contact with Laney and Fensel and that Spetrino was the individual he dealt with on Riverfront Holdings, LLC matters. Schoninger Testimony, Jan. 20, 2011; August 23, 2011.